THE PRESIDENT &c. OF THE FARMERS BANK OF MARYLAND *vs.* RICHARD DUVALL.—*June* 1835.

The liability of the endorser of a note is contingent, and depends upon a demand of payment being made upon the maker, and a due notification to the endorser of the dishonor of the note. On the failure of either, no recovery can be had against him.

Upon notes payable so many days after date, the *demand* may be made on the last day of grace, and notice of the dishonor to the endorser may be imme-

diately given; no demand of payment at any anterior day will justify the holder in treating the note as dishonored.

A demand of payment without the presentation of the note, would in general be equivalent to no demand; and when it is made, the holder should be prepared and ready to produce it.

Upon a note payable sixty days after date, a demand of payment upon the sixtieth day after the date of the note, would be unavailing to charge the endorser.

The practice of banks to give notice to the makers of notes of the time of their maturity and place of deposit for collection, cannot, where such notice has been delivered, be substituted for a demand of payment so as to affect the endorser.

When the mail went from A at sunrise on the 23d, and the post office was closed against the further reception of letters at 9 o'clock, P. M. on the 22d, this is to all practical purposes the mail of the 22d, and consequently upon a note dishonored at A upon the 22d, it is sufficient to mail the notice for the endorser on the 23d, and this although there was no mail again from A towards the endorser's residence until the morning of the 25th.

The *letter of the cashier* of a bank (the holder of a note sued on) addressed to and notifying the endorser of the note, that it was unpaid, and that he was held liable for its payment, was found in the letter-book of the bank, with this entry opposite "Put into the post office at A," on the day of its maturity. The cashier was dead, and the defendant admitted that the entry aforesaid was in the cashier's hand writing. *Held*, that this evidence was not sufficient to authorize the jury to find that the note in question had been demanded of the maker, when the note became payable.

The court may in all cases inform the jury, that there is no evidence, or no evidence sufficient in point of law, to establish a fact sought to be proved.

Where evidence is admitted to the jury in the court below without objection, it has and ought to have the same effect, as if admitted according to the strict rules of evidence.

Notice to produce the original notice sent to an endorser, is not necessary to let in secondary evidence of the contents of the first notice.

PER PRINCE GEORGE'S COUNTY COURT.

APPEALS from *Prince George's* County court.

These were actions of *Assumpsit*, instituted on the 21st of September 1829, by the appellants, against the appellee, as the *first* endorser of two promissory notes, made by one *Lewis Duvall*, negotiable at the banking house of the plaintiffs, payable each 60 days after date for the several sums of $7857 and $750, and dated respectively, on the 9th of May, and 20th of June 1827. The general issue was pleaded.

In the case upon the note for $750, which is dated on the 20th June 1827, and which attained maturity on the 22d of

the following August, it became a question, whether the notice of dishonor to the defendant was deposited in the post office in time.

The other questions are common to both cases; the evidence being the same, in each, except in the particulars in the last case, mentioned in the opinions of the judge, who delivered the opinion of this court, and they were argued together before the Court of Appeals.

1. At the trial, after the execution, and endorsement of the notes had been proved, the plaintiffs swore *James Cleary*, and by him offered to prove, that on the sixtieth day after the date of the notes, he the said *Cleary*, being the servant of the plaintiffs, and authorized, and directed by the plaintiffs so to do, served on *Lewis Duvall* the drawer of said notes, a written notice in the usual form, stating when the said notes were due, and must be paid. That he left the said notice with the said *Lewis Duvall*, as is the rule in all such cases. The plaintiff offered said proof as a part of the evidence offered, and about to be offered, to establish the liability of said defendant for the amount of said notes, and that every thing required by law, and the usage of the bank, had been done by the plaintiff, in order to collect said notes, and to make the endorsers therein liable, if the drawer made default in the payment of them. The defendant objected to said testimony, and insisted that the same was inadmissible, because no notice to produce the original paper, had been given to the defendant. But the court (*Stephen, Ch. J. and Key, A. J.*) were of opinion, that notice to produce said original paper, was not necessary, and permitted the plaintiffs to offer the aforesaid evidence to the jury. *The defendant excepted.*

2. After offering the testimony set forth in the foregoing bill of exceptions, which is to be considered as part of this bill of exceptions, the plaintiffs further to maintain the issue joined on their part, offered to read in evidence to the jury, from the letter-book of the plaintiffs, an entry therein, which is as follows:—" Copy

*Farmers Bank of Maryland,*
*22d August* 1827.

Sir—Please to take notice, that *Lewis Duvall's* note for $750, endorsed by you, and *Grafton B. Duvall,* dated 20th June 1827, payable sixty days after date, became due on this day, and remains unpaid, and that you, as an endorser on said note, are held liable for the payment of the same.

I am respectfully your obedient,
*Jonathan Pinkney,* Cashier.

*Richard Duvall,* Esquire
*Magruders, Prince Geo. County.*

And offered to prove by said *James Cleary,* that on the 23d day of August 1827, he deposited in the post office at *Annapolis,* where the principal banking house of the plaintiffs is situated, a duplicate of said letter, directed as therein stated to the defendant, *Richard Duvall* Esquire, *Magruders, Prince George's* county, which is the nearest post office to the defendants residence. But the defendant by his counsel objected to the reading of said paper, and to the testimony offered as aforesaid, because notice had not been given to the defendant to produce the letter which *it* was proposed to prove as aforesaid, had been received by him. But the court were of opinion that said entry, and testimony, were admissible in evidence, and permitted the same to be given to the jury. *The defendant excepted.*

3. The plaintiff having under the opinion of the court, as stated in the second bill of exceptions, read in evidence to the jury the entry aforesaid, and proved by the aforesaid witness, that on the 23d day of August 1827, he deposited in the post office at *Annapolis,* a letter addressed to the defendant, which he believes was a duplicate of the letter written in said book; the said witness being cross examined by the defendant's counsel, further proved, that he has no recollection of having read the letter, which he had before stated was deposited by him in the post office, nor of having compared said letter, with the letter written in said letter book, and that he does not know, what were the contents of the letter which he deposited

11

as aforesaid in the post office.    That he knows nothing of
said letter, other than from an entry, in the margin of said
book in his hand writing as follows, to wit, " Put in the post
office by *James Cleary* the 23d of August 1827," which entry
the said witness believes was made by him on said date, and
satisfies the said witness, that on the said day, he deposited
in the post office a letter, which he then believed, and still
believes was a duplicate of the letter written in said book.

And the said witness further stated, that the aforesaid letter
written in said book, is in the hand writing of *Jonathan Pink-
ney* deceased, late cashier of the *Farmers Bank of Maryland*,
and that he cannot, and in August 1827 could not, read the
writing of said *Pinkney*.    That he does not know in whose
handwriting the letter was, which the witness deposited in the
post office for the defendant, unless it was in the writing of
said *Pinkney*.    And the defendant, thereupon proved by com-
petent testimony, that the 20th day of June 1827 happened on
*Wednesday*, and that the 22d day of August 1827 happened
on *Wednesday*, and also proved, that in August 1827, and for
a long time before, and since, the mails left *Annapolis*, for the
city of *Washington* (by which mail route letters from *Annapolis*,
to *Magruders* post office in *Prince George's* county are trans-
mitted) on *Tuesday*, *Thursday*, and *Saturday* in each week,
and at, or before sunrise on said days, and that the mail is
usually closed at nine o'clock of the night preceding the day
of departure from *Annapolis*.    And the defendant also proved
by said *James Cleary*, that the business hours of the bank, are
from nine o'clock in the morning to three o'clock in the after-
noon, and that the letters from the officers of the bank,
intended to be sent the next day by the mail, are usually
deposited by him in the post office on each day, soon after
the closing of the bank at three o'clock.    The defendant
thereupon by his counsel prayed the court to instruct the jury,
that upon all the aforesaid testimony, the plaintiffs were not
entitled to recover ; because the evidence aforesaid, if believed
by the jury, is not sufficient to prove that any notice whatever,
was given to the defendant of the demand of payment, and of

the non-payment of the aforesaid note, by the drawer thereof. And because, if the jury shall find, that the aforesaid *James Cleary* did deposite in the post office at *Annapolis*, a letter directed to the defendant, as is herein before stated on the 23d day of August 1827, and that the letter deposited was a duplicate of the letter, so as aforesaid read in evidence, from the letter book of the plaintiffs, and that the note on which this action is brought, became payable on a *Wednesday*, and that the mails close, and leave the city of *Annapolis*, as is herein before stated, that then the plaintiffs have not given notice of the non-payment of the said note, within a reasonable and proper time, and because no evidence has been offered by the plaintiffs of a demand on the drawer *Lewis Duvall* when said note became payable, for the payment thereof. To *these several objections to the plaintiffs recovery, the plaintiffs* by their counsel objected, and insisted that the proof with respect to the deposite of the notice of dishonor in the post office, was inadmissible, and of its sufficiency the jury was to judge, and that the said notice was deposited in the post office in time—and that there was evidence of a demand of payment of the drawer made by the plaintiffs, on the day the said note became due and payable, and that the jury had a right to infer from all the proof and circumstances disclosed to them, that the said demand of payment was made in due time. But the court was of opinion, that there was no legal evidence, that any notice whatever was given to the defendant, of the demand of payment, and non-payment by the drawer, and if the proofs offered were evidence of said notice, the letter intended to give the same was not deposited in the post office, within a reasonable and proper time; and thirdly, that there is no proof in the cause that the amount of said note, was demanded of *Lewis Duvall* the maker when the same became payable, and accordingly instructed the jury, that upon the evidence set forth in this, and the previous exceptions, the plaintiffs cannot recover.

*The plaintiffs excepted*, and the verdicts and judgments being against them, they appealed to this court.

The causes were argued before ARCHER, DORSEY, and CHAMBERS, Judges.

MAGRUDER and JOHNSON, for the appellant.

1. As to the $750 note, there was evidence for the jury, that payment of the note was demanded of the maker. The holder of a note is only required to put the drawer in default, in order to charge the endorser, and this was done by the notice given the former on the 60th day, advising him that his note would be due in three days thereafter. This notice was given in pursuance of the usage of the bank as proved by *Cleary*, and if the jury from such evidence could infer that no other demand was usual, it would have established a legal demand, binding on the endorsers.

A case is not to be taken from the jury, when the evidence is such, that they are *at liberty* to draw the inference sought to be established. *Gibson and Johnson vs. Hunter*, 2 Hen. *Black.* 187. *Gibson vs. Hunter in error, Ib.* 288. After the preliminary notice, the drawer of the note was bound to go to the bank and pay it. *Whitwell et al, vs. Johnson,* 17 *Massa. Rep.* 451. These notes upon their face were negotiable at the banking house of the plaintiffs, and all the parties to them therefore, were bound to take notice of the usage of the plaintiffs in such cases. *Bank of Utica vs. Smith,* 18 *Johns.* 230. *Insurance Co. vs. Smith,* 6 *Harr. and Johns.* 171. *Bank of Columbia vs. Fitzhugh,* 1 *Harr. and Gill* 239. *Ib.* 248.

2. There was abundant evidence for the consideration of the jury, that notice of dishonor was sent to the defendant. In the record upon the large note, there is nothing to show, that the giving such notices was a part of the official duty of the cashier; but there is nothing in the discharge of such duty, incompatible with his office, and having in virtue of that office, a general superintendance over the affairs of the institution, when he does an act, he will be presumed to have done it in the line of his duty, unless the party contesting the regularity of such act, shows that it belonged to some other officer. The admissibility however of the letter, and the

marginal memorandum of the cashier, was not objected to, nor does the objection point to the acts being without the sphere of his official duties.   If such an objection had been made in the court below, evidence might have been adduced to remove the difficulty, to show that such acts, are strictly applicable to the office of cashier, and it would be a hardship therefore to give the objection, the effect now contended for. The objection aimed wholly at the *sufficiency*, and not the admissibility of the proof.

With respect to the large note, the proof is, that a letter was put in the post office on the 23d of August, the day after it fell due, directed to defendant.  This letter was written at the bank, and there is no evidence that the bank held any other note endorsed by the defendant.

From these facts, the jury might legitimately have inferred, that the letter in the book, was a copy of, that, which was deposited in the office, and if they could so have inferred, the court erred in deciding it to be insufficient.   *Davis et al, vs. Barney*, 2 *Gill and Johns.* 382.

3. The remaining question is, was the notice of dishonor, assuming it to have been given in fact, put in the post office in time.   Notice to an endorser of the dishonor of a bill or note, is not to be given, until a demand is made on the acceptor or maker.   And when in the case of a bank, such demand must be personally made, it is always done, after 3 o'clock P. M. of the day the note falls due.   The note is never placed in the hands of the notary until after 3 o'clock, and then to require that all the notices shall be written, and mailed by 9 o'clock of the same day, would be requiring a most inconvenient, if not impracticable duty.   An individual holder of a note is under no obligation to demand the money of the maker, at any, or between any given hours of the day. He may defer it until dusk, and in that case, it would be most unreasonable to require him, to notify the endorsers by the mail, which closes at 9 o'clock the same evening.   And the same rule which is applicable to individual holders, applies to banks, it being essential to the value of these commercial

instruments, that the principles regulating them, should be fixed, and uniform. The rule is, that each party has an entire day, to give notice to previous parties. *Baily* 172. *Flack vs. Green*, 3 *G. and J.* 474. And this means, the entire day after the note falls due. It cannot mean the same day, for that would be, to deprive the holder of the whole day to make the demand. A notice which is *mailed* the next day, is sent the next day in contemplation of law, though in fact, the mail may not actually go out on that day. The rule which gives each party, an entire day, is founded upon reason, and convenience; as it avoids the investigation of particular circumstances of excuse, which would often entangle the courts, and confuse a subject, which of all others, it is important should be governed, by plain and simple regulations. *Bray et al, vs. Hawden*, 5 *Maul. and Selw.* 68. 2 *Barn and Ald.* 501. Upon this point they cited also, *Chitty on Bills*, 365 (*Ed.* 1821.) *Ib.* 291, 401. *Roscoe Ev.* 161. 2 *Stark. Ev.* 258. *Burbridge vs. Manners*, 3 *Camp.* 193. *Baily on Bills*, 171 to 174. *Scott vs. Lifford*, 9 *East.* 347. *Whitwell et al, vs. Johnson*, 17 *Mas. Rep.* 449. *Darbishire vs. Parker*, 6 *East.* 3.

TANEY and BOYLE, for the appellee.

1. The engagement of the endorser is conditional, upon the default of the maker; and he is not in default unless he fails to pay, when the note is presented *for payment*. There must be a presentment for payment, when the note is due, and an offer to surrender it, by the holder, upon receiving his money. The maker is under no obligation to pay unless he can get his note. This is the general rule, and no special usage is shown to except this case from its operation, even if the usage of a particular bank, could create an exception, which may well be doubted. *Renner vs. Bank of Columbia*, 9 *Wheat.* 584.

The notice served by *Cleary* on the sixtieth day, was certainly no demand of payment. Its office, was simply to remind, *Duvall* (the maker) of the purport of his contract, to refresh

his memory; and is as ineffectual to charge the endorser, as a notice subsequent to the maturity of the note. Such notices are adopted from convenience, and not to supply the place of demand of payment, which cannot be made, unless the money is due, according to the terms of the contract. *Chitty on Bills* 245, *note* (1.) *Lennox vs. Roberts*, 2 *Wheat.* 377. *Renner vs. Bank of Columbia*, 9 *Ib.* 584, *do Ib.* 246, *note* (*K.*) That the money should be demanded when due, is the right of the endorser. *Chitty on Bills*, 233, 240—and the party who makes it, should have the note with him at the time. *Ib.* 245, 278.

In this case there was no evidence which the court could permit the jury to consider. So far from tending to prove a demand, on the last day of grace, as was necessary, it proved the contrary. It showed that the demand was premature, and consequently unavailing for the purpose for which it was offered.

The letter of the cashier, asserting the responsibility of the defendant, does not allege that a demand had been made. It is the mere assertion of the *opinion* of an officer of the plaintiffs, not an affirmance of a fact, upon which alone the liability of the endorser rested. Whether liable or not, was a question of law, which the cashier was not competent to decide, and it is impossible to deduce inferences of fact from the expression of such an opinion.

2. There was no evidence that the endorsers was notified at any time of the dishonor of the note. With reference to the letter deposited in the post office by *Cleary*, it is impossible to say, or even to presume, without launching into the wildest field of conjecture, that, it corresponded with the copy in the book; as he states explicitly, that he did not, and could not, compare them together. To suffer a jury to infer facts from such proof, would be to prostrate every safe rule, and refer the interests of life and property to the hazards of irregular conjecture, or ungoverned speculation. As regards the statement in the margin of the letter book in the handwriting of the cashier, it is not evidence, because it was not his duty to

put letters in the office. 1 *Stark. Ev.* 261, 294 *note* (1.) And that being the case a memorandum by him, can have no more effect, than a memorandum by a stranger. The presumption that an officer does his duty never applies, but when the omission of the act presumed, would be misconduct in such officer. *Roscoe on Ev.* 19.

3. With respect to one of the notes, the notice of the dishonor was not in time to charge the endorser.

This is a question of diligence, for the decision of the court, the facts upon which it arises being indisputed. And the rule is well settled that the notice must go by the mail of the succeeding day. *Chitty* 223 *in note, and* 315. *Lennox vs. Roberts,* 2 *Wheat.* 377.

In the present case, the reason for not departing from the rule, is a very strong one, as after *Thursday,* the day following the dishonor of the note, there was no mail until *Saturday. Smith vs. Mullett,* 2 *Camp.* 208.

ARCHER, Judge delivered the opinion of the court.

We shall examine the following questions which arise on the bill of exceptions taken by the plaintiff.

1. Is there evidence of a demand on the maker of the note?

2. Was notice of dishonor of the note duly given to the defendant?

The liability of *Richard Duvall* the endorser of the note, was a contingent liability dependent upon a demand of payment being made on the drawer, and upon a due notification to the endorser of the dishonor of the note. On the failure of either, no recovery can be had against the endorser.

The authorities, independent of the existence of any particular usage, where the notes are payable so many days after date, have definitely fixed the time and mode of demand, or presentment.

It appears at one time to have been questioned, as the drawer had the whole of the last day of grace to pay the money due, whether the holder could notify the endorser of the presentment. and dishonor on the last day of grace; but

whatever doubts may at any time have existed upon this subject, it is now abundantly settled, that such a note may be demanded on the last day of grace, and that notice of the dishonor may be immediately given, or in other words, if payment on the last day of grace be not made, or be refused upon demand, the holder may at once treat the note as dishonored, and give notice accordingly. But no demand of payment at any anterior day will, by the general principles of law, justify the holder to treat the note as dishonored.

The mode of demand appears to be equally well settled.

A demand without the presentation of the note, would in general be equivalent to no demand, and when it is made, the holder should be prepared and ready to produce it.

Testing the evidence relied upon here to shew a demand, by the above principles, independent of any question of usage, and it is quite apparent that no demand in contemplation of law has been made, because the notice relied upon as a demand, was made on the sixtieth day, when the note had three days according to commercial usage to run, and when by a neglect, or refusal to pay, it could not be dishonored. If such a notice could be treated as a demand, it would be difficult to say, that although the note had sixty days to run, a notice the next hour after the birth of the note, when it was due, and when it must be paid, would not also be equally a legal demand.

But the witness states, that he was the servant of the bank, and that he served on the drawer a written notice *in the usual form*, stating when the note was due, and must be paid, and that he left the said notice with the drawer, as is the *rule in all such cases*. It is supposed that this language of the witness, constitutes evidence of a usage on the part of the bank to make demand of payment, at a time, and under circumstances different from the general rules of law, and that efficacy should be given to such usage, if found by the jury, so as to validate as a demand, that which without such usage, would be a nullity. In the view which we take of the evidence, it is immaterial to examine the question, as to the

legal effect of such usage if established, because we consider that the witness proves no usage bearing on the question of a demand. The only conclusion which can be drawn from the evidence, is, that it is the practice of this bank, as it is of all banks to give notice of the falling due of notes; that the parties may be apprised, not only of the holders of the notes, but reminded, and admonished of the near approach of the time for the payment of their liabilities. The witness does not state the existence of any usage, to treat this common notification, as a substitute for the legal demand on the holder. The rule established is, on the contrary, perfectly consistent with the necessity of presentment for payment when due, and in the accustomed legal mode. The defect in the evidence to sustain the proposition, can in no manner be aided by the averment, of the purpose for which it was offered, for that is, the mere statement of the plaintiff, and can prove nothing. Had reliance been intended to have been placed, on such an alleged usage, the plaintiff should have gone further and proved, that by the usage of the bank, demands against the drawers of notes, in order to charge the endorsers, were always made by the alleged notification on the day notes first fell due, instead of being made according to the rules of law, and that such notice was by usage, a substitute for the lawful demand. In such a state of facts, the question would have been brought before the court, how far in point of law such a notice could operate as a demand.

The determination of this question would render it unnecessary to express any opinion on the second question, but as it is one of importance to the commercial community, and ought not to remain in doubt, and as the counsel have expressed a desire, that be our opinion what it might upon the question of demand, the court would give their views of the second question; we shall accordingly proceed to express our views upon that branch of the subject, and in doing so, shall not examine the question, whether the jury were in point of law authorized to draw any deductions from the evidence of *Cleary*, in relation to the contents of the alleged letter of notification,

or his putting in the post office on the day designated in the margin of the letter book, but shall for this question take it as conceded, that the copy of the letter in the record was sent to the post office on the 23d day of August.

The examination of the due notification of the dishonor of the note concedes the demand on the maker, and that notice of the demand and nonpayment were placed in the post office on the 23d of August, the day of the dishonor.

The mail from *Annapolis* to the place of the defendant's residence, closed at 9 o'clock on the last day of grace, (22d August) but did not leave *Annapolis* until sunrise on the 23d. It also appears that the next mail closed at 9 o'clock, on the 24th of August, and did not leave until sunrise on the 25th.

Mr. *Justice Bailey* in his treatise on Bills, states the rule to be, that notice may be given on the day of the dishonor, and that it must be given at farthest, by the expiration of the day following the failure, where the parties reside in the place where the presentment was made, and by the post of that, or the next post day, to those who reside elsewhere, and the same writer further states the rule to be, that each party has a day for giving notice, and that he will be entitled to the whole day, though the post by which he is to send it goes out within the day ; and in support of these rules, two cases have been cited which bear considerable affinity to this case. In *Bray vs. Hawden*, 5 *Maul. and Selw.* 68, it was decided that a party receiving notice of the dishonor of a bill on *Sunday*, gives notice in time by a letter put in the post office on *Monday*, in time for the *Tuesday's* mail, which took its departure at 12 o'clock, although there was a mail on *Monday* at 12 o'clock ; and in 2 *Barn. and Ald.* 501, the plaintiff received notice by a letter on a *Sunday*, of the dishonor of a bill—he did not send notice to defendant until *Tuesday's* post, which set out in the evening. He might have sent it on the evening of *Monday*, by the *Monday's* post, but on a motion for a new trial, after verdict for the plaintiff, the court held plaintiff was not bound to open the letter until *Monday*, nor bound to send notice until *Tuesday* ; and the *Supreme Court*

*of the United States*, have decided that notice need not be sent on the day of the dishonor of a bill, in a case in which the dishonor of a note occurred within their banking hours, and the mail left for the residence of the drawer, at half after 8 o'clock, on the same day. *Bank of Alexandria*, 9 *Peters* 45. A usage it is true, was established in that case, to give the notice as it was given, but *Thompson J.* in delivering the opinion of the court, declares the usage to be in conformity with the rule of law.

It would certainly not accord with the principles of the cases above cited, to adopt a rule, which would compel the bank upon dishonor, to give notice on the same day, and within a few hours after the dishonor. The mail here, closed in six hours after the customary banking hours, and in two of the above cases, a longer time had elapsed between the dishonor, and the starting of the mail, yet the holders were not held to give notice by the first post occurring within the day, or as in two of the cases to wait till the next day. It is true, in the cause now before the court, the mail did not go till sunrise of the 23d, but it was to all practical purposes the mail of the 22d, and not the mail of the 23d, because it closed at 9 o'clock of the 22d.

It is supposed that the case in 2 *Wheat.* 377, where it is said that notice of default of the maker, should be put in the post office, early enough to be sent by the mail of the succeeding day, is conclusive to shew, that the notice here, should have gone by the mail which left at sunrise on the 23d, but we have seen that for all practical purposes, this was but the mail of the 22d, as it closed on the night preceding at 9 o'clock, and it would have been impossible on *Tuesday* to have sent the letter by that mail, unless as *a way letter*, which we do not think the holder was bound to do.

It does not occur to us, that the fact of the mail's not leaving *Annapolis* again, until sunrise of the morning of the 25th, could bind the plaintiff to extraordinary diligence, in putting the notice in the post office on the day of the dishonor, nor should that fact deprive the party of the benefit of the rule,

which gave him until the next day to place his letter in the post office.

In confirmation of the above views, it is said in *Chitty on Bills* 314, that it is in no case necessary to give notice of the nonpayment of an inland bill of exchange on the day of refusal; and in the same treatise 315, is cited the case of *Brill vs. Jeremy and Bregg, Guildhall Sittings,* after *Hilliary* term 1827, in which *Abbott Ch. J.* considered the rule too well settled to be disturbed, that a party who receives notice of the dishonor of a bill, is not bound under any circumstances, to forward notice to the prior party on the same day, but may wait until the next day, and if no post proceeds from the adjacent town, or village, on such next day, it then suffices, if he puts a letter in the post, on any following day, so that it be forwarded by the next practicable post, and in a report of the same case in 1 *Moody & Malkin* 61, the judge is made to say, that in these cases it is of great importance to have a fixed rule, and not to resort to nice questions of the sufficiency in each particular case, of a certain number of hours or minutes. The general rule is that a party need not write on the very day he receives the notice. If there be no post on the following day, it makes no difference. The next post after the day he receives the notice, is soon enough, notwithstanding in that case, the party might easily have given notice of the dishonor, by the post of the day he received the notice, because he received notice of the dishonor, at 9 o'clock in the morning, and the mail left at 6 o'clock, in the evening.

Considering the mail which left on the 23d at sunrise, as in fact the mail of the 22d, from its closing on that day, it would appear from the last cited case, that the plaintiffs here would have been in time, had they transmitted the notice by the mail which closed on *Friday* the 24th, not having been obliged to send notice on the day of dishonor, and there being no other mail going to defendants until the mail of *Friday.*

On the supposition therefore that the evidence of *Cleary,* is of such a character as to be admissible to prove that the

notice was put in the post office on the 23d, we think the notice was in time.   JUDGMENT AFFIRMED.

In the case upon the note for $7857, the learned Judge said—

The evidence in this case is the same as that which was offered in the case between the same parties on a promissory note for $750, which has just been decided, except that in this cause, evidence was offered from the plaintiff's letter book, of a letter dated 11th July, from the cashier to the defendant, notifying him that *Lewis Duvall's* note, which the defendant had endorsed, remained unpaid, and that the defendant as endorser was held liable for the payment of the same, and of an entry opposite the said letter in the letter book, "Put into the post office *Annapolis*, July 11th 1827," and an admission of the defendant, that the said letter, and entry was in the handwriting of *Mr. Pinkney*, who was cashier of the bank, and that he was dead.

The same questions arose in this case as in the former, as to the demand on the maker, and as to the notification of non payment to the endorser.

Unless the letter above offered in evidence is of such a character, as that deductions may legally be drawn of a demand, there is nothing in this case, more than in the last, which would enable the plaintiff to recover upon that ground. It is supposed by the counsel for the plaintiff, that this evidence having been before the jury without objection, the cashier's statement that the defendant was held liable for the payment of the same as an endorser, furnishes a ground for the jury to presume, that every thing had been done, which the bank was bound to do, in order to create a liability on the part of the defendant, and that as he was bound to make a demand to create such liability, it might be left to the jury to say, that such demand had been made.   It is said, that it is evidence tending to prove the issue, and that under the authority of *Davis and Barney*, they ought to be permitted to deduce the fact of demand from the statement.

But we cannot concur with this view.  It is a mere allegation of the cashier, that the bank intended to look to the

endorser for the money, and contains upon its face no allegation of a demand, or any declaration that the note was at the bank, on the day of payment, or that any person was there authorized to receive payment, and give up the note. Whether a demand was made, may in many cases, and in this, would be a mixed question of law and fact, and if the jury could be permitted to deduce such a conclusion, from the letter, then they would be left to the determination of matters not within their province. Besides, it would be merely from wild speculation and conjecture, that such a deduction could be drawn, and we apprehend it was not the intention of the court, in *Davis and Barney*, to allow such cases to go to the jury, but that they may on application in all such cases inform the jury, that there is no evidence, or no evidence sufficient in point of law, to establish the fact sought to be proved. We therefore think in this case, as we did in the former between the same parties, that the evidence is not sufficient to prove the demand of the drawer, when the note became payable.

As to the notice in this case, if any was given, it is conceded it was in time.

The only remaining question, relates to the sufficiency of the entries in the letter book by the deceased cashier, to prove that a letter, the copy of the one adduced, was put in the post, and on the day mentioned in the margin of the letter book. If these entries are evidence, it cannot be doubted, but that the facts were fully established, because the entry declares the time when the letter was sent to the post, and so far from there being a doubt about the sufficiency of the evidence, there would be no reasonable ground to presume against it. But reliance is placed upon the inadmissibility of the evidence to establish the notice, and time of notice, growing out of the want of proof, that these entries were made by the cashier in the line of his duty as an officer of the bank. We however, think that no such objection can now be taken to the evidence, for it was all admitted without objection in the court below, and having been so admitted, it is, and ought to have the same effect, as if admitted according to the strict rules of

evidence. So far therefore, as the court below determined that the evidence was insufficient to prove notice, at the time when the note became payable, we think the court below erred.

But inasmuch as there was no sufficient evidence of demand, we concur with the County court in the direction which they gave to the jury, that the plaintiff was not entitled to recover.

JUDGMENT AFFIRMED.