## PHINEAS THURSTON, Surv. Partner of ARTHUR L. FOGG, *vs.* THOMAS LLOYD.

The court has the right to instruct the jury, that there is no evidence sufficient in law to establish the fact sought to be proved.

Where a note is proved to have been signed by one member of an existing firm in the partnership name, the legal presumption is, that it was given for a joint indebtedness in the regular course of partnership dealings, until the contrary is shown on the part of the defence.

The granting a prayer at the instance of the plaintiff that there was no evidence of a certain fact, though the instruction be regarded as an abstraction, is not cause for reversal upon appeal by defendant, if there was no such evidence, because the defendant was not prejudiced thereby.

APPEAL from Baltimore county court.

This was an action of *assumpsit,* brought by the appellee against the appellant, upon a promissory note, dated the 12th of July 1847, for $200, at sixty days, payable to the appellee, or order, and purporting to be signed by "Fogg and Thurston." The declaration contained a count upon the note and the common money counts.

*Exception.* The plaintiff offered the note, and proved that the signature of Fogg and Thurston thereto was in the handwriting of Fogg, formerly a partner in the late firm of Fogg and Thurston, who kept the Fountain Inn. That witness

who was in the employ of the firm for about nine months, partly in 1846 and partly in 1847, as assistant book-keeper and clerk, was frequently sent by Thurston to various persons in the city of Baltimore to borrow money for the use of the firm; that upon such occasions witness would take a memorandum of the amount wanted, and return with the money when he received it, but he has no recollection of ever having taken upon these occasions a promissory note from Thurston, of Fogg and Thurston, or of Thurston for the money so to be borrowed; that upon such occasions the arrangement for the money appeared to have been previously made between Thurston and the person from whom witness got it; that similar transactions took place at the instance of Fogg, but with different persons from those with whom Thurston had communication, the former having one set of lenders and the latter another; that all the loans witness so obtained were made for the use of the firm, and the proceeds invariably brought to, or accounted for, by witness to Thurston, who was exclusively, so far as witness knew, the financial partner of the concern; that Thurston often requested Fogg to go out and borrow money, and the latter would go or send witness; that the money so borrowed was used to pay the expenses and notes of the firm, many of which were given for borrowed money; that Thurston upon one occasion desired witness to request Fogg to go and borrow money of the plaintiff, and that he well knew that money was borrowed by Fogg from the plaintiff for the use of the firm.

The defendant then proved, that the co-partnership of Fogg and Thurston commenced on the 12th of October 1846, and terminated by dissolution on the 12th of August 1847, and that Thurston had capital for the management of the concern; that on the 4th of September 1847, plaintiff purchased of the firm of Lawrence, Thompson & Co , of which the witness was a partner, brandy to the amount of $373.70, upon a credit of six months, and upon the same day, or the day following the delivery thereof, said he would pay therefor in cash, upon getting the discount off for the six months' credit, which

arrangement was agreed to, and a short time thereafter plaintiff called at his store, witness then being out, and settled for the brandy by giving in payment the note in question, and another of one Soper, having about sixty days to run, and the balance in cash; that when witness returned and saw the note of Fogg and Thurston, he suspected there was something wrong about it, because it was not signed in the manner nor in the same handwriting that their notes, (many of which he had seen,) were usually signed, and under this impression witness took it to Thurston to know if it was all right, and in consequence of that interview, returned the note to the plaintiff and received cash in lieu thereof; that all the notes of Fogg and Thurston witness ever saw before were signed in the handwriting of Thurston.

The plaintiff then proved by another witness, who was his assistant bar-keeper, that Fogg frequently in 1846 and 1847 came to plaintiff to borrow money for the use, as witness understood, of the firm, and that plaintiff frequently loaned him money, but witness never saw or knew of any note being given to the plaintiff for any such loans; that the course of dealing between plaintiff and Fogg and Thurston was, that the latter, when they were short of money, would borrow of the plaintiff as one friend or neighbor would of another, and return the amount borrowed in a few days thereafter, and he frequently saw money so borrowed and returned.

The defendant then offered the books of the plaintiff, containing the account of all the money transactions and dealings between the plaintiff and the firm of Fogg and Thurston. In this book there is an entry charging said firm with $200 cash, loaned July 12th, 1847.

The plaintiff then asked two instructions, which are fully stated in the opinion of this court. These prayers the court, (FRICK, C. J., and LE GRAND, A. J.,) granted, and the defendant excepted, and the verdict and judgment being against him, appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*St. George W. Teackle* for the appellant, insisted, that the evidence stated above *tends* to disprove the *prima facie* case made by the note itself:—1st. The plaintiff's first witness proves, that no note was given by defendants to plaintiff for any money witness borrowed, and that he never knew Fogg to sign the name of the firm to any note, and that Thurston was the financial partner. 2nd. The testimony of plaintiff's bar-keeper is to the same effect, that he never knew any note to be given when the defendants borrowed money of the plaintiff. 3rd. The account furnished from the books of the plaintiff show that no note was ever given, for there is none credited. 4th. A *legitimate inference* might be drawn by the jury from the purchase of the brandy, that the plaintiff had not the note in his possession at *that time*, otherwise he would *then* have passed it in part payment to the vendors of the brandy, and therefore that it was *ante-dated;* they might also have inferred from this transaction that there was *collusion* between plaintiff and Fogg, either to secure a private debt of Fogg or for some other improper purpose.

Now it is the settled law of this State, that if there be the *slightest evidence* in any case, no matter how *weak* the jury alone are entitled to have it and judge of it. (2 *G. & J.*, 404, *Davis vs. Barney.* 2 *H. & G.*, 189, *Ferguson vs. Tucker.* 4 *H. & J.*, 516, *Burt vs. Gwinn,*) and it is submitted there is *evidence* from which the jury might have found the facts negatived by the plaintiff's *first* prayer. But this prayer also takes from the jury their exclusive province of finding what the note was given for, and makes the court decide what was the consideration of it as a question of law. The fact that it was given for a *partnership debt* is as material and necessary to be found to entitle the plaintiff to recover, as that it was signed in the partnership name by either of the partners during the partnership, and ought to have been put to the jury.

The second prayer was also erroneously granted:—1st, because there was evidence from which the jury might properly have found collusion between the plaintiff and Fogg, and that the note was given for a private debt of the latter.

Thurston *vs.* Lloyd.

2nd, because it puts no question to the jury essential to entitle the plaintiff to recover, but solely instructs them that there was no evidence of certain *theories of facts*—certain *abstract propositions*—which even, if in fact there was no such evidence, the plaintiff's right to recover would not follow or be in anywise affected.

*Vivian Brent* for the appellee.

We submit that there is no evidence to rebut the *prima facie* case made out, if the jury find the facts left to them in the plaintiff's first prayer, and that until rebutted *prima facie* evidence *in judgment of law* is sufficient to establish the case. 6 *Pet.*, 622, *Kelly vs. Jackson*. 14 *Pet.*, 334, *United States vs. Wiggins*. The only question then is, as to the power of the court to instruct the jury that there is no evidence in the case of the matters stated in the prayers. On this point the cases in 7 *H. & J.*, 36, and 7 *G. & J.*, 20, *Cole vs. Hebb*, are conclusive. As to the power of one partner to bind the partnership, see 11 *Johns. Rep.*, 544. 5 *Wendell*, 223. 17 *Seargt. and Rawle*, 165. *Collyer on Partnership*, 401, 404. 15 *Wendell*, 364. 16 *Wendell*, 505. *Chitty on Bills*, 31. 7 *H. & J.*, 47, 28. There was no evidence that the note was *ante-dated*, or that it was not on partnership account. On the contrary the defendant's own testimony, from the books of the plaintiff, shows that the money was advanced for the partnership.

Eccleston, J., delivered the opinion of this court.

The first instruction given by the court below, at the instance of the plaintiff is, "that there is no evidence that the note in controversy was ante-dated, or that it was given for a private debt of either member of the firm, or for any purpose other than a partnership transaction; and, therefore, the plaintiff had a right to recover, if the jury believed from the evidence that the note was signed in the partnership name, by either of the partners, during the existence of the partnership."

After a full and minute examination of the testimony, we

do not perceive any evidence legally tending to prove the note was ante-dated, or given for the separate liability of either partner, or for any transaction not of a partnership character. For the right of the court to tell the jury, there is no evidence sufficient in law, to establish the fact sought to be proved, see *Farmers Bank of Maryland, vs. Duval*, 7 *G. & J.*, 95. It is needless to refer to the other cases on the subject. Under the circumstances the plaintiff had a right to recover if the jury believed the note was signed in the manner stated in the prayer.

The appellant considers this instruction erroneous, because it does not submit to the jury the question, whether the consideration of the note was a partnership debt. This, he says, is a material fact, to be established by proof, on the part of the plaintiff. We do not consider the objection a valid one. In cases similar to the present, the general rule is, that where a note is proved to have been signed by one member of an existing firm, in the partnership name, the legal presumption is, that it was given for a joint indebtedness in the regular course of partnership dealings, until the contrary is shown on the part of the defence. *Doty vs. Bates*, 11 *Johns. Rep.*, 546. *Mifflin vs. Smith*, 17, *Serg. & Rawle*, 165, 170. *Whitaker vs. Brown*, 16 *Wend.*, 505. *Story on Part., sec.* 102, *note* 1, *and note* 1 *to sec.* 127 *on page* 192.

We have said there is no evidence contradicting this presumption of law, or in other words, there is no proof of the note having been given for any other than a partnership transaction; and we may add, that there is evidence calculated to prove, the consideration of the note was a loan of money to the firm. If there had been evidence to show the note was based upon a separate liability, the objection relied upon, might have been urged with propriety; but in the absence of such proof, there was no error in granting the prayer.

The second instruction is, "that there is no evidence of collusion between Fogg and Lloyd, whereby the latter agreed to take the note of the firm for the individual debt of Fogg."

The appellee insists that there is evidence from which the

Thurston *vs.* Lloyd.

jury might have found collusion between the plaintiff and Fogg, and that the note was for the private debt of the latter. What has been said in regard to the proof in the cause whilst considering the first prayer renders it unnecessary to say more on that subject at this time.

Another objection to the last prayer, urged in the printed argument of the appellant's counsel is, that it "puts no question to the jury essential to entitle the plaintiff to recover, but solely instructs them that there is no evidence of certain *theories of facts*—certain *abstract propositions*—which, even if in fact there was no such evidence, the plaintiff's right to recover would not recover, or be in anywise affected."

Assuming, without admitting, the instruction is an abstracttion, still we cannot reverse the judgment, because the defendant was not prejudiced by it. If there had been evidence of collusion, then such an instruction, would have been erroneous, and subject to reversal, as it would be giving a prayer at the instance of the plaintiff, disregarding the proof of the opposite party. But as in our opinion there is no proof, legally tending to establish collusion; the court having told the jury there was no such evidence, the appellee could not be injured by the instruction, for the plain and manifest reason, that he had no proof on which to sustain such a defence. If a prayer in this case had been granted at the instance of the appellee, that there was testimony offered or given, which, if believed by the jury to be true, did tend to prove collusion, such an instruction might properly have been complained of by the plaintiff, because by it the jury might have been misled, and brought to the conclusion that such proof was in the cause, when in reality none such existed. We, therefore, affirm the judgment.

*Judgment affirmed.*